EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KYLE MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action 07 C 6760 |
| | ) | |
| FIRST RESOLUTION INVESTMENT CORP. | ) | Judge Joan B. Gottschall |
| and TRANS UNION LLC | ) | |
| Defendants. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| _____ | ) | |
| | ) | |
| TRANS UNION LLC | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| FIRST RESOLUTION INVESTMENT CORP. | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

### THIRD PARTY COMPLAINT

Defendant/Third-Party Plaintiff Trans Union LLC ("Trans Union"), by its attorneys, hereby complains against Defendant/Third-Party Defendant First Resolution Investment Corporation ("First Resolution") as follows:

### PARTIES

1.    Kyle Mitchell ("Plaintiff") is a resident of the Northern District of Illinois.

2.    Trans Union, a Delaware limited liability company, is a consumer reporting agency with its principal place of business in Illinois.

3.    First Resolution, a Nevada corporation, is an investment firm that purchases charged off consumer credit accounts for the purpose of collections.

### JURISDICTION

4.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1367(a), and 15 U.S.C. § 1681p.

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## COUNT I
## INDEMNIFICATION PURSUANT TO CONTRACT

6.    Trans Union repeats and re-alleges paragraphs 1 through 5 of this Third-Party

Complaint as if set forth fully herein.

7.    On March 17, 1998, Trans Union and First Resolution entered into a Subscriber

Tape Agreement (the "Agreement") to have First Resolution furnish credit information to Trans

Union. A copy of the Agreement is attached hereto as Exhibit A.

8.    As part of the Agreement, First Resolution agreed to maintain and update the

account information it furnishes to Trans Union with the current status of each account.

(Agreement ¶ 2B.)

9.    First Resolution also agreed to use its best efforts and skills to provide that the

credit information it furnishes to Trans Union is reliable and accurate. (Agreement ¶ 4B.)

10.    First Resolution also agreed to comply with all applicable requirements under the

Fair Credit Reporting Act ("FCRA") and other applicable federal or state laws. (Agreement

¶ 4D.)

11.    First Resolution agreed to indemnify Trans Union from claims by any third party,

such as Plaintiff, arising on account of First Resolution's negligence or failure to perform its

obligations under its agreement with Trans Union. (Agreement ¶ 4C.)

12.    On November 30, 2007, Plaintiff brought this action against Trans Union and

First Resolution for alleged violations of the FCRA. In particular, Plaintiff's allegations against

Trans Union relate to information that First Resolution furnished to Trans Union and the results

of investigations that First Resolution reported to Trans Union in response to Plaintiff's disputes

of information that First Resolution provided to Trans Union. Specifically, Plaintiff alleges that

information in his Trans Union file regarding a First Resolution account (the "Account") was

inaccurate.

13.    Trans Union denies that it violated the FCRA with respect to Plaintiff. Nonetheless, First Resolution is the party that furnished information to Trans Union regarding the Account and, pursuant to the Agreement and otherwise, is ultimately responsible for its actions that did not comply with the Agreement and the FCRA.

14.    In the event that Plaintiff is awarded any relief against Trans Union in the main action herein, First Resolution is obligated to fully and completely indemnify Trans Union and reimburse Trans Union for all damages, attorneys' fees, and costs awarded to Plaintiff, as well as reimbursing Trans Union for all of its attorneys' fees and costs incurred in the defense of Plaintiff's lawsuit.

WHEREFORE, Third-Party Plaintiff Trans Union LLC, prays that this Court:  (1) enter judgment in favor of Trans Union LLC and against Third-Party Defendant First Resolution Investment Corporation, in an amount equal to such damages, attorneys' fees, and costs as may be awarded against Trans Union LLC on the claims made by Plaintiff, together with all attorneys' fees and costs incurred by Trans Union LLC in its defense of this action; and (2) grant Trans Union LLC such further and additional relief as this Court deems just and reasonable.

## <u>COUNT II</u>
## INDEMNIFICATION PURSUANT TO COMMON-LAW RIGHT

15.    Trans Union repeats and re-alleges paragraphs 1 through 14 of this Third-Party Complaint as if set forth fully herein.

16.    As set forth above, First Resolution had a contractual relationship with Trans Union prior to any of the conduct alleged by Plaintiff to violate the FCRA, by which First Resolution agreed to (1) maintain and update the account information it furnishes to Trans Union with the current status of the accounts and (2) comply with all applicable requirements under the FCRA.

17.    On November 30, 2007, Plaintiff brought this action against Trans Union and First Resolution for alleged violations of the FCRA.  In particular, Plaintiff's allegations against

Trans Union relate to information that First Resolution furnished to Trans Union and the results of investigations that First Resolution reported to Trans Union in response to Plaintiff's disputes of information that First Resolution provided to Trans Union.  Specifically, Plaintiff alleges that information in his Trans Union file regarding the Account was inaccurate.

18.     Trans Union denies that it violated the FCRA with respect to Plaintiff. Nonetheless, First Resolution is the party that furnished information to Trans Union regarding the Account and, pursuant to its relationship with Trans Union, is ultimately responsible for its actions that did not comply with the Agreement and the FCRA.  As a result, there is a qualitative difference between the respective conduct of Trans Union and First Resolution, since the information in Trans Union's file for Plaintiff regarding the Account was furnished by First Resolution, and Trans Union justifiably relied on the information First Resolution furnished regarding the Account

19.     In the event that Plaintiff is awarded any relief against Trans Union in the main action herein, First Resolution is obligated to fully and completely indemnify Trans Union and reimburse Trans Union for all damages, attorneys' fees, and costs awarded to Plaintiff, as well as reimbursing Trans Union for all of its attorneys' fees and costs incurred in the defense of Plaintiff's lawsuit.

WHEREFORE, Third-Party Plaintiff Trans Union LLC, prays that this Court:  (1) enter judgment in favor of Trans Union LLC and against Third-Party Defendant First Resolution Investment Corporation, in an amount equal to such damages, attorneys' fees, and costs as may be awarded against Trans Union LLC on the claims made by Plaintiff, together with all attorneys' fees and costs incurred by Trans Union LLC in its defense of this action; and (2) grant Trans Union LLC such further and additional relief as this Court deems just and reasonable under the circumstances.

Dated: March 12, 2008            Respectfully submitted,

                                        **TRANS UNION LLC**


                                        By: /s/ Sharon R. Albrecht
                                                    One of Its Attorneys


Monica L. Thompson (ARDC #06181455)
Albert E. Hartmann (ARDC #06256064)
Sharon R. Albrecht (ARDC #06288927)
**DLA PIPER US LLP**
203 North LaSalle Street
Suite 1900
Chicago, Illinois 60601
312-368-4000

EXHIBIT A

04. 23. 98   04.   PM   *TRANS UNION    DIV    P18

Apr-08-98 03:10P TU NORCALIF          510-689-0683          P.11
Trans Union Corporation          7144470832   P.011/016

# SUBSCRIBER TAPE AGREEMENT

This Agreement is made and entered into this 17 day of March, 1998 by and between First Pacific Investment Corporation ("Subscriber") and Trans Union Corporation, a Delaware corporation ("Trans Union")

## 1.    PURPOSE OF AGREEMENT

A.    Trans Union is engaged in the business of furnishing computerized credit reporting services to credit grantors and credit bureaus operating in certain areas throughout the United States.

B.    For this purpose, Trans Union maintains a centralized computer database containing credit information with respect to consumers in the areas served. Such database is continually maintained and updated by the input of credit information obtained on machine readable magnetic tape from various automated local, regional, and national credit grantors. Subscriber desires to furnish to Trans Union, and Trans Union desires to obtain, the credit information maintained by Subscriber subject to the terms and conditions stated herein.

## 2.    SPECIFIC COMMITMENTS OF SUBSCRIBER

A.    Subscriber agrees to furnish to Trans Union information from its records with respect to each current or closed consumer credit account included in the centralized credit account files which Subscriber has established for all consumers obtaining credit from Subscriber.

B.    Subscriber further agrees that with respect to each consumer credit account included in the initial tapes furnished to Trans Union, and with respect to new accounts hereafter opened, Subscriber will, at approximately monthly intervals, maintain and update the credit information contained in such accounts with the current status of each account

## 3.    SPECIFIC COMMITMENTS OF TRANS UNION

A.    Trans Union agrees that it will use its best efforts to process and incorporate into its centralized database the credit information furnished to it by Subscriber, although Subscriber recognizes that all such data may not be incorporated.

B.    Trans Union further agrees that it will not sell or furnish the accounts receivable customer list of Subscriber, nor extract directly from such a list the specific names of credit customers for promotional or any other purpose. However, this prohibition will not restrict Trans Union from performing a list editing service from its database for its subscribers.

## 4.    MUTUAL RIGHTS AND OBLIGATIONS

A.    Trans Union shall use, employ, furnish and exert its best efforts, skills and equipment to accurately process into its database the credit information received from Subscriber, and it shall take, use and employ all reasonable precautions to prevent the loss, alteration, theft, misuse or improper access to such information, but it shall not be a guarantor that such information shall be processed into its database with absolute accuracy and completeness; nor can Trans Union guarantee the integrity or security of such credit information.

B.    Subscriber shall use, employ, furnish and exert its best efforts and skills to provide that the credit information furnished Trans Union is reliable and accurate information, but

04. 23. 98   04 : 2 PM   *TRANS UNION DIV   P19

Apr-08-98 03:11P TU NORCALIF                          510-689-0683          P.12
                                                      7144470032    P.012/016

- 2 -

Subscriber shall not be a guarantor of the accuracy of completeness of such credit information furnished to Trans Union.

C.    Each party hereto shall be liable to any third party claimant for its own acts of negligence with regard to the performance of its duties hereunder and shall and does hereby agree to indemnify and save harmless the other party hereto of and from all such third party claims arising on account of its action of negligence, or on account of its failure to perform all of its obligations hereunder, and any loss, cost or expense, including reasonable attorney's fees, incurred by the other party in connection therewith.

D     Each party hereto shall at all times comply with all requirements applicable to it of the Fair Credit Reporting Act and other applicable federal or state legislation or regulations as now or as hereafter become effective.

E.    The term of this Agreement shall commence on the date hereof and shall be perpetual, except that either party thereto may terminate this Agreement upon a prior thirty (30) day notice to the other.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their respective duly authorized officers on this 17 day of March , 1998 .

Subscriber: First Resolution Investment Corp .

By: _____

Its: President

Trans Union Corporation

By: _____

Its: _____